IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

DEVIN FORDSON, *Appellant.*

No. 1 CA-CR 23-0491

FILED 08-01-2024

---

Appeal from the Superior Court in Navajo County
No. S0900CR202000911
The Honorable Joseph S. Clark, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Celeste Kinney
*Counsel for Appellee*

The Rigg Law Firm, P.L.L.C., Pinetop
By Brett R. Rigg
*Counsel for Appellant*

------

## OPINION

Judge Paul J. McMurdie delivered the Court's opinion, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

------

**McMURDIE**, Judge:

¶1        Defendant Devin Fordson appeals his conviction and sentence for transportation of a dangerous drug for sale. We hold that a defendant must assert his or her Confrontation Clause rights to preserve the issue for anything but fundamental error review on appeal. Here, we only review for fundamental error because Fordson waived his Confrontation Clause rights at the trial by failing to object to the substitute expert. We affirm the conviction because there was no fundamental error.

### FACTS[1] AND PROCEDURAL BACKGROUND

¶2        In December 2020, a state trooper saw a traffic violation on Interstate 40 near Winslow and performed a traffic stop. Amanda Stallings drove the car while Fordson slept in the front passenger's seat.

¶3        The trooper spoke with Stallings and saw that she exhibited unusual symptoms consistent with anxiety. The trooper reviewed the car's rental agreement paperwork and found that the rental timeline contradicted Stallings's travel plans. The trooper testified that in his experience, he had "seen a very large amount of smugglers utilize rental cars," and he would become suspicious if he saw "inconsistencies along with the rental timelines that do not match the rental agreement." Based on the inconsistencies, the trooper grew suspicious and asked Stallings if he could search the car. Stallings consented to the search.

¶4        The trooper asked Stallings about Fordson, and Stallings stated that they had been dating for two weeks. Stallings called Fordson by a nickname and claimed she did not know his last name. This caused the

------

[1]        We view the facts in the light most favorable to sustaining the judgment. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

trooper more suspicion because he thought Stallings was lying about their relationship. The trooper woke up Fordson and told him to exit the car.

¶5        During the car search, the trooper found a deflated spare tire and felt "anomalies within the tire." The trooper detained Fordson in his patrol car. In the trooper's car, Fordson was recorded saying:

> I knew it. I fucking knew it. I should, boy should've, would've, could've ain't good enough . . . boy I'm fucked up now . . . fucking this girl got us pulled the fuck over. I should've been woke and keeping this girl on point but it's too late now boy I'm fucking going to jail for a long ass time. Boy I am fucked.

¶6        Once the trooper placed Stallings in the car, Fordson and Stallings spoke:

> Fordson: We've been ratted out, man.
> Stallings: And like he was sitting there, he was sitting there when I passed him. And then he like waited before he pulled out.
> Fordson: But did you look at him when he was passing?
> Stallings: No, I didn't look at him at all. Should I have?
> Fordson: Don't ever look at them.
>           *     *     *
> Fordson: I'm telling y'all, I already know. That's why I always tell y'all when you coming through here you've got to be on your shit.
> Stallings: We've been dating for a couple weeks.
> Fordson: Yeah.

The trooper believed Stallings and Fordson's conversation showed they tried to get their stories straight.

¶7        The trooper and another officer opened the spare tire and found packages of a white crystalline substance inside it. The trooper arrested Stallings and Fordson and seized and secured the packages.

¶8        The trooper obtained a sample from one of the packages for testing and sent the sample and the packages to the crime lab. The testing revealed that the sample was methamphetamine. Together, the packages weighed 1.56 pounds. The crime lab identified thirteen fingerprints as Fordson's on a package's plastic wrap. The State charged Fordson with

transportation of a dangerous drug for sale, a Class 2 felony. *See* A.R.S. § 13-3407(A)(7), (B)(7).

**¶9**        Joseph Blakesley, who tested the sample to determine its chemical makeup, no longer worked for the Department of Public Safety. So the State called another lab employee, Jason O'Donnell, to testify at Fordson's trial. When alerted that Blakesley would not testify, Fordson had "some concern" under Arizona Rule of Evidence ("Rule") 703 because O'Donnell did not personally observe the drug testing and questioned whether O'Donnell had sufficient training to review the analysis. *See* Ariz. R. Evid. 702, 703. The court allowed Fordson to question O'Donnell on voir dire outside the jurors' presence to verify his qualifications. The court was satisfied that O'Donnell had the requisite qualifications, and Fordson did not object to O'Donnell's qualifications or testimony after the voir dire.

**¶10**        O'Donnell testified about his experience in controlled substance testing and explained the crime lab's chain of custody procedures. O'Donnell then testified that he reviewed Blakesley's notes. Other than a later-corrected item number, O'Donnell said nothing in the notes looked abnormal, and it was his opinion that "[b]ased on everything [he] saw," the tested sample was methamphetamine. Fordson did not object on any basis to O'Donnell's conclusions or the admission of the methamphetamine packages.

**¶11**        The jury found Fordson guilty. During the aggravating circumstances trial phase, the State urged the jury to find the presence of an accomplice as an aggravating factor partly because Stallings told the trooper she had been dating Fordson for two weeks, and she told Fordson the same thing in the patrol car. The State claimed, "She clearly was an accomplice. She was trying to help him . . . accomplish this task."

**¶12**        The jury found the State proved two aggravating circumstances: 1) the presence of an accomplice and 2) the commission of the offense in expectation of pecuniary gain. The court found additional aggravation and found that the aggravation outweighed the mitigation evidence. *See* A.R.S. § 13-701(F). The court sentenced Fordson to 21 years, a slightly aggravated term for a category three repetitive offender. *See* A.R.S. § 13-703(C), (J).

**¶13**        Fordson appealed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

### A. The Superior Court Did Not Fundamentally Err by Admitting the Expert Testimony.

¶14 Fordson argues that allowing O'Donnell, a substitute expert, to testify about the drug test results violated the Confrontation Clause. The Sixth Amendment's Confrontation Clause "prohibits the introduction of testimonial statements by a nontestifying witness" unless the defendant had a prior opportunity to cross-examine the now-unavailable witness. *Ohio v. Clark*, 576 U.S. 237, 243 (2015); *see also Pointer v. Texas*, 380 U.S. 400, 403 (1965) ("[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment."). The Confrontation Clause "applies only to testimonial hearsay." *Davis v. Washington*, 547 U.S. 813, 823-24 (2006).

¶15 "Testimony" is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v. Washington*, 541 U.S. 36, 51 (2004). Testimonial evidence includes "*ex parte* in-court testimony or its functional equivalent . . . such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.* It also includes formal statements to government officers and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52. "A document created solely for an 'evidentiary purpose,' . . . made in aid of a police investigation, ranks as testimonial." *Bullcoming v. New Mexico*, 564 U.S. 647, 664 (2011) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009)).

¶16 Hearsay is an out-of-court statement "a party offers in evidence to prove the truth of the matter asserted in the statement." Ariz. R. Evid. 801(c). "When an expert conveys an absent analyst's statements in support of his opinion, and the statements provide that support only if true, then the statements come into evidence for their truth." *Smith v. Arizona*, 144 S. Ct. 1785, 1791 (2024).

¶17 Fordson states that the issue here is "nearly identical" to the issue in *Smith*, which caused the Court to remand the case to determine whether the evidence was testimonial and thus subject to the Confrontation Clause. *See Smith*, 144 S. Ct. at 1801-02. In *Smith*, law enforcement officers

found the defendant with what appeared to be drugs. *Id.* at 1795. The analyst who tested the substances did not testify at the trial. *Id.* Instead, a substitute expert reviewed the lab report and the analyst's notes, referred to the materials at trial, conveyed what the documents said, and offered his opinion on the chemical nature of the substances. *Id.* at 1795-96. The Supreme Court held that the analyst's statements were admitted for their truth. *Id.* at 1799-1800.

¶18 But as the State points out, the cases' procedural histories differ. In *Smith*, the defendant objected on Confrontation Clause grounds at trial. But Fordson did not object to the expert testimony under the Arizona Rules of Evidence or the Confrontation Clause. And even assuming Fordson's pre-voir dire concerns preserved a Rule 703 objection, such an objection did not preserve a Confrontation Clause challenge. *See Melendez-Diaz*, 557 U.S. at 313, n.3 ("The right to confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may adopt procedural rules governing the exercise of such objections."); *State v. Boggs*, 218 Ariz. 325, 337, ¶ 55 (2008) (Although courts review *de novo* Confrontation Clause challenges, the failure to object at trial means the defendant "must show fundamental error."); *State v. Alvarez*, 213 Ariz. 467, 469, ¶ 7 (App. 2006) ("A 'hearsay' objection does not preserve for appellate review a claim that admission of the evidence violated the Confrontation Clause."). Fordson made no Confrontation Clause objection at trial, so we will only reverse if the error is fundamental and caused prejudice. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005).

¶19 For our fundamental error analysis, we assume without deciding that the substitute expert's testimony violated the Confrontation Clause. To prevail on fundamental error review, the defendant must prove the trial error: (1) "went to the foundation of the case," (2) "took from the defendant a right essential to his defense," or (3) "was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). The first two prongs require the defendant to prove prejudice. *Id.* To establish prejudice, a defendant must show "that without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *Id.* at 144, ¶ 31. Establishing prejudice depends on the nature of the error and the case facts. *Id.* at ¶ 29.

¶20 Fordson bears the burden of establishing fundamental error. *See Escalante*, 245 Ariz. at 142, ¶ 21. Fordson argues the Confrontation Clause violation was fundamental error because whether he transported a dangerous drug for sale is dependent on the testimony of whether the tested items were dangerous drugs. He continues, "This is a key element of

the alleged crime. Everything else is contingent on the proper authentication of the drugs." Essentially, Fordson argues the trial error "went to the foundation of the case." *See id.* An error goes to the foundation of the case "if it relieves the prosecution of its burden to prove a crime's elements, directly impacts a key factual dispute, or deprives the defendant of constitutionally guaranteed procedures." *Id.* at 141, ¶ 18.

**¶21** The Confrontation Clause allows jurors to assess the evidence's reliability through cross-examination. *Crawford*, 541 U.S. at 61. And Fordson had no opportunity to cross-examine Blakesley, the individual who tested the substance to determine whether it was methamphetamine. The error arguably "went to the foundation of the case" because it deprived Fordson of a constitutionally guaranteed procedure. *See Escalante*, 245 Ariz. at 141, ¶ 18.

**¶22** Still, Fordson must show prejudice. *See State v. Foshay,* 239 Ariz. 271, 276-77, ¶ 23 (App. 2016) (To establish prejudice for fundamental error review, "a defendant must show that, but for the error, a reasonable factfinder could have reached a different result."). Fordson fails to establish how the jury could have reached a different verdict had he cross-examined Blakesley about the drug test. *See Escalante*, 245 Ariz. at 142, ¶ 21; *see also State v. Butler*, 230 Ariz. 465, 472, ¶ 25 (App. 2012). Had Fordson cross-examined Blakesley, Fordson could have tried to cast doubt on the Department of Public Safety's testing methods and the test result's reliability. But he focused the juror's attention on the evidence's reliability when cross-examining O'Donnell and during closing arguments. The jury heard that O'Donnell did not test the drugs, did not know where the sample came from, and did not have personal knowledge about the actual testing of the substance. During closing arguments, Fordson emphasized that O'Donnell did not test the substance; he merely read someone else's notes and "never went back and ran a second test to make sure it was correct." Fordson also highlighted that the sample tested was never presented to the jury. Fordson stated:

> For all we know, that's a box full of sugar or flour or anything else because, again, nobody has testified to the fact that they took a core sample out of a particular bag that had a particular fingerprint that came back to a particular result and that result, a core sample itself, is not here in evidence.

**¶23** But along with O'Donnell's opinion that the substance tested was methamphetamine, the State presented other circumstantial evidence supporting that the substance was methamphetamine, a dangerous drug.

*See Melendez-Diaz*, 557 U.S. at 329, n.14 (The Court rejected the notion that only an analyst's testimony can prove that a substance is as alleged.); *State v. Jonas*, 162 Ariz. 32, 34 (1988) ("That a substance is an illicit drug can be proved by circumstantial evidence."); *see also* A.R.S. § 13-3401(6)(c)(xxxviii). The jury saw pictures of packages of a white, crystalline substance hidden inside a tire. The trooper testified that the white, crystalline substance found in the tire was "consistent with methamphetamine." Fordson has not shown that if the person who tested the substance had been cross-examined, the jury could have reasonably reached a different verdict. *See Escalante*, 245 Ariz. at 144, ¶ 31. Thus, we discern no fundamental error resulting in prejudice.

**B.      The Superior Court Did Not Err by Admitting Stallings's Statements.**

**¶24**      Fordson also argues that the State "improperly used the hearsay statements of Amanda Stallings to argue she was an accomplice." Fordson claims the trooper's testimony and the patrol car recording contained inadmissible hearsay, and the statements "were then used during opening and closing arguments to convince the jury that Amanda Stallings was an accomplice." Fordson also argues that admitting Stallings's statements violated the Confrontation Clause.

**¶25**      "We review the admission of testimony for an abuse of discretion but apply a fundamental error standard to testimony admitted without objection." *State v. Allen*, 253 Ariz. 306, 325, ¶ 13 (2022). Confrontation Clause challenges to evidentiary rulings are reviewed *de novo. State v. Tucker*, 215 Ariz. 298, 315, ¶ 61 (2007). Here, Fordson objected to the admission of the patrol car recording on hearsay and Confrontation Clause grounds but objected to Stallings's statements to the officer only on hearsay grounds. We review each admitted statement in turn.

### 1.      The Superior Court Did Not Err by Admitting Statements from the Patrol Car Recording.

**¶26**      Fordson claims the court erred by admitting Stallings's statements in the patrol car because the State used them "for the truth of the matter asserted and were impermissible hearsay."[2] Hearsay is a

---

[2]      Fordson does not challenge the admission of his own statements from the recorded conversation. And his side of the conversation was admissible as an opposing party's statement under Rule 801(d)(2)(A).

statement that "the declarant does not make while testifying at the current trial or hearing" and is offered into evidence "to prove the truth of the matter asserted in the statement." Ariz. R. Evid. 801(c). Generally, hearsay is not admissible unless an exception applies. *See* Ariz. R. Evid. 802.

¶27        But "[s]tatements 'offered for a purpose other than [proving] the truth of the matter asserted' are not hearsay." *Allen*, 253 Ariz. at 328, ¶ 27 (quoting *State v. Larson*, 222 Ariz. 341, 345, ¶ 21 (App. 2009)). For example, the court may admit out-of-court statements offered to prove the effect on the listener or to provide context for a defendant's responses. *Id.* (citations omitted); *see also State v. Forde*, 233 Ariz. 543, 563, 564, ¶¶ 73, 78 (2014) (A text message stating, "cops on scene, lay low" was not hearsay because the message was offered not to show the cops were on scene, but that the declarant was communicating concerns about police activity to someone he thought would share his concerns, suggesting the person's involvement.).

¶28        The State did not offer Stallings's statements from the recording to prove what the trooper was doing when Stallings drove past him or whether Stallings looked at the trooper. The trooper had already testified about the circumstances leading to the traffic stop. Rather, the State offered Stallings's statements to put Fordson's responsive statements in context and show Fordson's involvement in transporting the drugs. *See Allen*, 253 Ariz. at 328, ¶ 29; *Forde*, 233 Ariz. at 564, ¶ 78.

¶29        Nor did the State offer Stallings's statements to prove that Stallings and Fordson had been dating for two weeks. Their dating history was irrelevant. Instead, Stallings's statements to Fordson showed that they were trying to get their stories straight and were working together. *Cf. State v. Webb*, 164 Ariz. 348, 352 (App. 1990) (The challenged statement was offered to establish that the declarant was concealing the crime.). The superior court did not abuse its discretion by admitting the patrol car recording over the hearsay objection because Stallings's statements were not hearsay. *See* Ariz. R. Evid. 801(c).

¶30        Next, Fordson argues his Confrontation Clause rights were violated by admission of the patrol car recording because Fordson had no "opportunity to interview, cross-examine or confront Amanda Stallings about her statements or the content of the recording." The State claims there was no Confrontation Clause violation because Stallings's statements in the patrol car were not testimonial. Even if Stallings's statements were testimonial, Fordson's Confrontation Clause challenge still fails because the clause "does not bar the use of testimonial statements for purposes other

than establishing the truth of the matter asserted." *State v. Womble*, 225 Ariz. 91, 97, ¶ 12 (2010) (quoting *Crawford*, 541 U.S. at 59, n.9). And because the State offered Stallings's statements from the patrol car recording for purposes other than their truth, the superior court did not err by admitting the patrol car recording.

### 2. The Superior Court Did Not Commit Reversible Error by Admitting Stallings's Statements to the Trooper.

¶31 Fordson claims the court erred by allowing the State to present the statements made by Stallings to the trooper. The State claims Stallings's statements to the trooper "were admitted to show their unreasonableness and effect on the officer before the search of the vehicle." But statements admitted for non-hearsay purposes must still be relevant. *See State v. Rivera*, 139 Ariz. 409, 414 (1984) ("[R]elevancy is the unifying requisite factor for the admissibility of statements for non-hearsay purposes."); Ariz. R. Evid. 402 ("Irrelevant evidence is not admissible."). Here, the officer's suspicion was not an issue in controversy in this case—Stallings consented to the vehicle search. The State's use of Stallings's statements for that purpose would be error.

¶32 But even assuming error, Fordson fails to establish harm from the admission. *See State v. Bocharski*, 218 Ariz. 476, 486, ¶ 38 (2008) (quoting *State v. Bass*, 198 Ariz. 571, 580-81, ¶ 39 (2000)) (We review hearsay violations for harmless error, and error is harmless "when the reviewing court is satisfied beyond a reasonable doubt that the error did not impact the verdict."). Fordson argues that the statements "were used to prove the accomplice aggravator[,] which led to Mr. Fordson being incarcerated for twenty-one years." But other admissible evidence, such as the patrol car recordings and fingerprint evidence, reasonably supported Fordson's involvement and that Stallings and Fordson were accomplices. *See Bocharski*, 218 Ariz. at 486, ¶¶ 40-41; *see also* A.R.S. § 13-301 (An accomplice intends to promote or facilitate the offense commission and either solicits or commands another person to commit the offense, aids another person in committing the offense, or provides means or opportunity for a person to commit the offense.). Thus, Fordson has not shown that the error affected the verdict. *See Bocharski*, 218 Ariz. at 486, ¶ 38.

¶33 Nor did the error affect Fordson's sentence. Fordson's 21-year sentence for the Class 2 felony falls between the presumptive and the maximum term for a category three repetitive offender. *See* A.R.S. § 13-703(J). For the court to impose the maximum sentence, the State only needed to prove one aggravating factor. *See* A.R.S. § 13-701(C). In this case,

the jury found two aggravating factors. And Fordson makes no challenge to the jury's finding of the second aggravating factor that he committed the offense in expectation of pecuniary gain. Thus, Fordson fails to show how admitting Stallings's statements affected his sentence. *See State v. Martinez*, 210 Ariz. 578, 584, ¶ 21 (2005) ("[O]nce a jury implicitly or explicitly finds one aggravating factor, a defendant is exposed to a sentencing range that extends to the maximum punishment."). Any error was clearly harmless.

¶34        Finally, we address Fordson's Confrontation Clause challenge to the court's admission of Stallings's statements to the trooper. Fordson made no Confrontation Clause objection when the trooper testified about his conversation with Stallings. *See State v. Alvarez*, 213 Ariz. 467, 469, ¶ 7 (App. 2006) ("A 'hearsay' objection does not preserve for appellate review a claim that admission of the evidence violated the Confrontation Clause."). Thus, we review the challenge for fundamental error resulting in prejudice. *See Henderson*, 210 Ariz. at 567, ¶¶ 19-20.

¶35        The State argues Stallings's statements to the trooper were not testimonial "because they were given to the officer to avoid arrest" and "were not created as a substitute for trial testimony." We reject the State's argument. *See State v. Parks*, 213 Ariz. 412, 413, ¶¶ 6, 7 (App. 2006) (The Confrontation Clause applied because "the purpose of the police officer's questioning . . . was to obtain information regarding a potential crime . . . . [and] there were no exigent safety, security, or medical concerns."). That said, Fordson fails to meet his burden of establishing fundamental error. *See Escalante*, 245 Ariz. at 142, ¶ 21 ("The defendant bears the burden of persuasion at each step" of fundamental error review.). Fordson claims the State improperly used the evidence to prove Fordson had an accomplice. Because, as detailed above, the evidence did not unfairly prejudice Fordson, the superior court did not commit reversible error by admitting Stallings's statements to the trooper.

## CONCLUSION

¶36        We affirm.

